IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHELLE R. FOX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 C 3433 |
| | ) | |
| ANDREW MARSHALL SAUL, | ) | Judge John J. Tharp, Jr. |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Michelle Fox seeks judicial review of the Commissioner of Social Security's determination that she is not disabled and therefore ineligible to receive disability insurance benefits. Before the Court is the plaintiff's brief in support of reversing the Commissioner's decision and the Commissioner's motion for summary judgment. Dkts. 13, 20. For the following reasons, Fox's motion is granted, the Commissioner's motion is denied, and the case is remanded to the Commissioner for further proceedings.

### BACKGROUND

**A.     Procedural Background**

On March 5, 2013, Michelle Fox filed a claim with the Social Security Administration for a period of disability and to receive disability insurance benefits. Fox alleges that she became disabled on December 1, 2012. R. 227.[1] The Commissioner denied her claim and her request for reconsideration. R. 118, 125. Fox then sought and received a hearing before an administrative law judge ("ALJ"). R. 129, 131. The ALJ held hearings on May 13, 2014, June 27, 2014, and March

---

[1] Citations to R. refer to pages in the administrative record, which was filed as Dkt. 6.

20, 2015, and denied Fox's claim on May 27, 2015. R. 148, 166, 193, 22. Fox appealed the ALJ's decision to the Social Security Appeals Council, which denied her request for review—rendering the ALJ's decision the final decision of the Commissioner. R. 20, 8-9; *see Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). Fox filed this action for judicial review pursuant to 42 U.S.C. § 405(g) in 2017.

> B. **Factual and Medical Background**

Michelle Fox was born on July 20, 1973, and was 39 years old when the claimed disability period started. R. 228. She has a high school diploma. R. 309. At the time that Fox applied for disability benefits in 2013, she was employed by McDonald's as a lab tech at a training center in Romeoville, Illinois. R. 77, 289. She worked part time—generally from 8:30 a.m. to 12:00 p.m., Monday through Friday— and earned somewhere between $9 and $10 per hour. *Compare* R. 28, 30 (ALJ decision mentions wages of first $9.70 per hour, then $9.40 per hour, and describes a pay raise), *with* R. 74 (Fox's oral testimony that she was paid $9.70 per hour), R. 261 (McDonald's Equifax report showing $9.40 per hour), *and* R. 289 (Fox self-reports a $9.10 hourly wage). Fox maintained this employment, including stable hours and pay, through the pendency of her appeal from the denial of benefits. R. 28.

Fox is seeking disability based on chronic back pain. R. 307. In 1989, when Fox was sixteen years old, "doctors performed a posterior fusion of Fox's spine with implantation of Harrington rods to correct scoliosis." Pl.'s Br. 2, ECF No. 13. From December 2012 onward, Fox began experiencing intense and consistent pain in that region of her back, which also led to muscle spasms and migraines. R. 74, 77. Fox's consultative examination reports confirmed she was suffering from "[c]hronic back pain with history of spinal surgery correction for scoliosis." R. 417, 423, 455. Other diagnoses included chronic migraine, degeneration of the lumbosacral

2

intervertebral disc, and chronic somatic dysfunction of the spine. R. 68, 461. An X-ray confirmed the hardware located in Fox's spine and indicated mild level scoliosis. R. 420, 68. Fox was prescribed various steroids and pain medications throughout 2013 and 2014 and sought chiropractic and acupuncture treatments. *See* R. 370, 385, 397, 487. Multiple treating physicians concluded that work restrictions would be appropriate given Fox's limited range of motion and inability to sit or stand for more than forty-five minutes to an hour at a time due to pain and discomfort. Pl.'s Br. 3-4; R. 92-93, 553, 557.

### C. The ALJ's Decision

After several hearings with testimony from Fox and medical and vocational experts, the ALJ concluded that Fox was not under a disability, within the meaning of the Social Security Act, from December 1, 2012, through the date of his decision, issued May 27, 2015, based on Fox's earnings throughout that period. R. 25. Fox's case was decided in the first of the SSA's five-step sequential evaluation process for determining whether an individual is disabled. R. 26. At step one, the ALJ "must determine whether the claimant is engaging in substantial gainful activity" as that phrase is defined in 20 C.F.R. § 404.1572(b). *Id.* If a disability claimant "has earnings from employment . . . above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA" and she will be deemed not disabled, regardless of the severity of her physical or mental impairments. *Id.* A claimant may also show that her employment should not be considered "substantial gainful activity," earnings level notwithstanding, if her work is accommodated or performed under special conditions such that her earnings are "subsidized"— if, in effect, "the person [is] being paid more than the reasonable value of the actual services performed." 20 C.F.R. § 404.1574(a)(2). Based on his calculations of Fox's average monthly earnings for 2013 and 2014, the ALJ found that Fox "has engaged in substantial gainful activity

3

since December 1, 2012"; that there was no continuous 12-month period during which Fox was not engaged in SGA; and, as a result, that Fox was not under a disability. R. 27-30. The ALJ also determined that the evidence Fox had submitted to demonstrate special accommodations was "unreliable and insufficient" and "internally contradictory," and concluded that Fox's work activity was not performed under special conditions. R. 30. Because he found that Fox engaged in SGA during the claimed disability period, the ALJ's analysis did not proceed to the second step of the sequential analysis. R. 26.

## DISCUSSION

The Social Security Act authorizes judicial review of the final decision of the Commissioner of Social Security. 42 U.S.C. § 405(g). This Court reviews the Commissioner's legal determinations *de novo* and the Commissioner's factual findings deferentially. *See Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). The Commissioner's decision will therefore be upheld if his findings are supported by substantial evidence. *See Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005); 42 U.S.C. § 405(g). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt*, 395 F.3d at 744. The standard requires "more than a scintilla," but can be satisfied by "less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the Commissioner. *See Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner; "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Commissioner must articulate enough detail and clarity in the analysis to allow a reviewing court to conduct meaningful

appellate review. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001); *see also Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (explaining the ALJ is "not required to discuss every piece of evidence, but must build a logical bridge from evidence to conclusion"); *Yonts v. Barnhart*, No. 03 C 3420, 2004 WL 1005690, at *2 (N.D. Ill. May 4, 2004) ("It is not enough that the record contains evidence to support the ALJ's decision; if the ALJ does not rationally articulate the grounds for that decision, the Court must remand.").

Fox has two objections to the ALJ's decision. She first argues that the ALJ's calculations to determine whether her earnings surpassed the SGA threshold were incorrect and not supported by substantial evidence. Pl.'s Br. 8. She specifically criticizes the ALJ's decision not to deduct the cost of a 2013 chiropractor visit from her 2013 yearly earnings as an impairment-related work expense, and she argues that the ALJ improperly calculated her 2014 monthly earnings by quarter, rather than over the entire eleven months for which there was evidence in the record. *Id.* 8-10. Second, Fox claims that the ALJ's evaluation of whether her work was highly accommodated was not based on substantial evidence, because the ALJ improperly discredited answers from Fox's supervisor on an SSA questionnaire (and Fox's corroborating testimony) that indicated her work was modified in various ways. Pl.'s Br. 8, 10. The Commissioner maintains that both the ALJ's SGA calculations and subsequent determination that Fox did not work under special conditions were reasonable and made in accordance with SSA regulations. Def.'s Mem. Supp. Summ. J., ECF No. 21.

Fox's objections to the ALJ's calculations are persuasive. First, the ALJ's decision not to treat Fox's 2013 payment for a chiropractic visit as an "impairment-related work expense" ("IRWE") is not supported by substantial evidence. In her Work Activity Report dated March 5, 2013, Fox attested that she had spent her "own money for items or services related to [her] physical

5

and/or mental conditions that [she] needed in order to work and for which [she] did not get reimbursed." R. 293. She cited a $30 per visit cost to see the chiropractor and listed one specific date that she made a payment: March 4, 2013. *Id.* Office treatment records from Bolingbrook Family Chiropractic confirm that she visited the office for an adjustment on March 4, 2013, R. 400, 409, and her January 2013 intake form at the practice indicates that she intended to pay the chiropractor by personal check. R. 397. Visit notes from Hinsdale Orthopaedics also reflect that Fox visited a chiropractor in 2013 and that Fox "was paying out of pocket" for the visits until they "got cost prohibitive." R. 459. And evidence in the record supports plaintiff's argument that the chiropractic visits were necessary for Fox to continue working. At the oral hearing on May 13, 2014, Fox testified that she started receiving adjustments in early 2013 because her back pain was increasingly severe, she had developed bad migraines, and over the counter medications like ibuprofen were no longer helping. R. 77. She further testified that the adjustments eliminated her migraines and, to a lesser extent, alleviated her back pain. R. 77-78. Dr. Tyler Reed, a practitioner at Bolingbrook Family Chiropractor, corroborated that testimony, writing that it was "crucial for [Fox] to seek frequent chiropractor care" and that "[h]er condition will tend to deteriorate without regular adjustments." R. 426.

The ALJ mentions Fox's $30 claim in his decision, R. 27, but concludes, with no further explanation, that "[t]he burden is on the claimant, and she has not provided sufficient evidence or otherwise demonstrated impairment related work expenses." R. 29. Fox's non-attorney representative certainly should have ensured that copies of Fox's payments for her chiropractic visits were in the record; however, in light of the ample record evidence that Fox was visiting a chiropractor and paying for her visits out of pocket for a substantial part of 2013, the ALJ also had a "burden to develop the record" and "make a 'reasonable effort' to ensure" that Fox's record

contained the information necessary to make an informed disability determination. *Martin v. Astrue*, 345 F. App'x 197, 202 (7th Cir. 2009); *see also Albrecht v. Astrue*, No. CIV 11-407 CG, 2017 WL 9360904 (D.N.M. Feb. 7, 2017) (holding that the claimant's testimony at hearings before the ALJ raising the issue of steep medical expenses "triggered the ALJ's duty to develop the record with regard to Plaintiff's IRWE's"). As the Commissioner notes, a payment for medical services does not automatically qualify as a deductible IRWE; the claimant has the burden of demonstrating that a claimed item or service was required for the claimant to maintain employment. Def.'s Mem. 6; 20 C.F.R. § 404.1576(b)(2). And the Commissioner offers various arguments about why Fox's chiropractor visits do not fall within this category, including that Fox continued to work, and even increased her work hours, after she stopped visiting the chiropractor in mid-2013. Def.'s Memo. 6. But the decision not to treat Fox's chiropractor payment as an impairment-related work expense was a significant one—as Fox notes, deducting even the single claimed $30 payment from her 2013 income would be enough to bring her average monthly earnings from $1,041, $1 above the SGA threshold, to $1038.50, $1.50 below the SGA threshold. Pl.'s Br. 9. A finding so consequential requires "some minimal level of articulation" of the ALJ's analysis, and the ALJ's "complete[] fail[ure] to explain his reasons for rejecting the uncontradicted evidence" of Fox's payment is grounds for remand. *Look v. Heckler*, 775 F.2d 192, 195 (7th Cir. 1985).

The ALJ's decision to calculate Fox's 2014 monthly average earnings by quarter is similarly unsupported by substantial evidence. To calculate Fox's 2013 monthly income, the ALJ averaged Fox's total $12,492 income across the entire twelve-month period. R. 29. For 2014, however, the ALJ relied on quarterly wage data indicating that Fox earned $2,881 in the first quarter, $2,501 in the second quarter, and $3,235 in the third quarter. R. 29; R. 269-70. He

7

concluded that Fox's earnings were "above substantial gainful activity level [$1070 per month] for . . . at least the third quarter of 2014." *Id.*

Fox argues that the ALJ ignored "the manner of averaging wages called for by the regulations," and that under 20 C.F.R. § 1547a(a) and § 1574(b), the ALJ was required to average Fox's earnings on a yearly basis. Pl.'s Br. at 10. The record contains income information through the pay period ending November 25, 2014; through that period, Fox earned $11,608.79. *Id.* Averaged across the first eleven months of 2014, Fox's monthly earnings were $967.39, well below the $1070 SGA threshold for 2014. *Id.* Calculated quarter by quarter, however, Fox's monthly earnings in the third quarter were $1078.33, just above the SGA threshold.

The Commissioner maintains that the ALJ's decision to calculate Fox's monthly average earning by quarter was a reasonable one. Under 20 C.F.R. § 404.1574a(b)(c), earnings are calculated over each separate period of work—a separate period of work may begin when SGA levels change or when "there is a significant change" in "work patterns or earnings." Def.'s Mem. 7. The Commissioner argues that the 30% change in earnings between the second and third quarters of 2014 (from $2,501 to $3,235) is a "significant change" driven by an increase in the number of hours Fox worked. Fox characterizes the change as a "temporary increase" and "consistent with a pattern of fluctuating earnings by quarter" over 2013 and 2014. Pl. Reply Br. 2, ECF No. 25.

It is not clear that the increase between the second and third quarters of 2014 should be considered a "significant change." The ALJ notes elsewhere in his decision that Fox's "average weekly hours worked was between 25 and 30 hours," R. 27, and the same was true in the third quarter of 2014. *See* R. 261-62 (Fox's hours worked in the third quarter's biweekly pay periods ranged from 23.24 hours to 58.62 hours). And based on the 2014 calendar, there were eight pay periods, rather than six, that would have figured into Fox's third quarter earnings; four extra weeks

8

of pay reported in that three-month period would account for most, if not all, of the $734 difference between Fox's second and third quarter earnings. *Id.* (showing six pay periods for each of January through March and April through June, but eight for July through September).

But even if the fluctuation in Fox's earnings between the second and third quarters of 2014 should be considered a "significant change" under SSA regulations, the ALJ must make that finding in his decision. *See Kwiatkowski v. Astrue*, No. 10 C 6322, 2012 WL 1378653, at *5 (N.D. Ill. Apr. 20, 2012) (concluding the ALJ's decision was not supported by substantial evidence because "the ALJ did not make a finding of any material changes in Plaintiff's earnings or work patterns, and it is not clear why he chose to report Plaintiff's monthly earnings in the manner that he did"); *Shepard v. Astrue*, No. 5:10-CV-323, 2011 WL 5419852, at *5 (D. Vt. Oct. 12, 2011) ("The ALJ did not discuss changes in either [claimant's] earnings or work patterns in his decision, and it is unclear why he opted to average [claimant's] earnings in the manner that he did. Although significant changes in [claimant's] earnings . . . perhaps *could* justify the failure to average [claimant's] earnings over the entire period of work, it cannot be discerned from the ALJ's decision or the record as a whole that the ALJ actually applied and relied on this regulation."). His failure to do so also warrants remand.

Fox's remaining objection regarding the ALJ's determination that she did not work under special circumstances need not be resolved, as that issue may be mooted by the ALJ's renewed SGA determination on remand. However, the Court notes that the ALJ's explanation of his finding that Fox did not work under special circumstances is far more robust than his (non-existent) explanations for his earnings calculations—he describes in detail the content of the evidence submitted, and notes the specific inconsistencies and deficiencies that he believes undermine the credibility of that evidence. R. 27-30. An ALJ "cannot limit his discussion to only that evidence

9

that supports his ultimate conclusion," but it is the ALJ's responsibility to resolve conflicting evidence—ultimately, even if reasonable minds could disagree with the outcome, "[i]t is not for the court to reweigh the evidence or make credibility determinations." *Spencer v. Astrue*, 776 F. Supp. 2d 640, 646 (N.D. Ill. 2011).

*   *   *

For the foregoing reasons, the Commissioner's decision is reversed and remanded for further proceedings consistent with this opinion, and the Commissioner's motion for summary judgment, Dkt. 20, is denied.

Dated: November 24, 2020

John J. Tharp, Jr.
United States District Judge